USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/22/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAISHA PENA, *individually and on behalf of all others similarly situated*; KEVIN DE LA CRUZ, *individually and on behalf of all others similarly situated*; JIZMARC PADILLA, *individually and on behalf of all others similarly situated*,

        Plaintiffs,

v.

NB NETWORK SOLUTIONS INC. *et al.*,

        Defendant.

No.   19-CV-1681 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiffs Taisha Pena, Kevin De La Cruz, and Jizmarc Padilla brought this action on behalf of themselves and all other persons similarly situated against Defendants, alleging violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Codes, Rules, and Regulations ("NYCRR").  Before the Court is the parties' application for approval of their negotiated settlement agreement (the "Settlement Agreement").[1] *See* Dkt. 79, Ex. 1 (Settlement Agreement).

District courts must scrutinize FLSA settlements to determine if they are fair and reasonable.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 201, 206 (2d Cir. 2015). In doing so, courts must evaluate the totality of circumstances, including "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid

---

[1] "The Agreement resolves the claims asserted against Defendants by Named Plaintiffs and eleven similarly situated individuals who 'opted-in' to this lawsuit ('Opt-in Plaintiffs, collectively with Named Plaintiffs, 'Plaintiffs')." Dkt. 79 at 2 (Mot. for Settlement Approval).  Although the parties had "tentatively agreed" prior to mediation to negotiate this matter on a class-wide basis, their negotiations proceeded as to Plaintiffs' claims only once it became evident that Defendants lacked "sufficient assets to satisfy a class-wide settlement." *Id.* at 3.

anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

### A. Settlement Amount

Under the proposed Settlement Agreement, Defendants have agreed to pay Plaintiffs $290,000. *See* Dkt. 79, Ex. 1 ¶ 2. Approximately one-third of that amount – $101,104.28 – is intended to cover attorneys' fees and costs. Plaintiffs, therefore, "will receive $188,895.72, which constitutes 100% of their claimed FLSA overtime and minimum wages," in addition to "a substantial portion of their NYLL claim for unpaid spread of hours[.]" Dkt. 79 at 4. Having reviewed the parties' proposed Settlement Agreement and their motion in support of approving the Settlement Agreement, the Court finds that this settlement amount is fair and reasonable.

First, "Plaintiffs' reasonable estimate of their FLSA claims for unpaid overtime and minimum wage is collectively $153,145.66." Dkt. 79 at 3; *see also* Dkt. 79, Ex. 2 (Estimated Damages Chart). Plaintiffs reached this calculation after reviewing time and payroll records for approximately 300 current and/or former employees, which Defendants produced prior to pre-mediation discovery. *See* Dkt. 79 at 3. As such, this settlement amount is greater than Plaintiffs' estimated damages under FLSA and also provides them with a portion of the damages they might have received under the NYLL. Thus, this proposed amount "fairly accounts for Plaintiffs' possible recovery." *Id.* at 5.

Second, the settlement amount is also fair and reasonable when viewed "in light of the legal and evidentiary challenges that would face [Plaintiffs] in the absence of a settlement." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016). Here, the parties agree

that "there is a *bona fide* dispute between [them] regarding Plaintiffs' wage and hour claims." Dkt. 79 at 3. Defendants, for instance, dispute the number of hours that Plaintiffs worked and contend that they paid them in accordance with the law. *See* Dkt. 79 at 3 (explaining that they "are confident that the time and payroll records they maintained for Plaintiffs provide a defense against their claims."). Plaintiffs, on the other hand, explain that the Settlement Agreement allows them to avoid "the possibility of receiving no recovery at all" or "face the prospect of waiting months, if not years, for the matter to proceed through motion practice and, eventually, trial." Dkt. 79 at 6. Therefore, according to both parties, this Settlement Agreement "enables [them] to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses" and "accounts for the risks in proceeding with the litigation." Dkt. 79 at 5. In this district, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Exec. Club Compensation Litig.*, No. 10-CV-1145 (KMW), 2014 WL 185628, at *7 (S.D.N.Y. Jan. 14, 2014).

Finally, it is also important that the Settlement Agreement was "the product of arm's-length bargaining between experienced counsel." *Wolinsky*, 900 F. Supp. 2d at 335. The parties, who both had "experienced counsel," reached and drafted this Settlement Agreement "with the assistance of an experienced mediator pursuant to the Southern District's Mediation Program[.]" Dkt. 79 at 2. For these reasons and based on the totality of the circumstances, the Court accepts the parties' settlement amount.

### B. Attorneys' Fees

The Court also approves the proposed attorneys' fees and costs. "In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229-30 (S.D.N.Y. 2016). Here, the proposed attorneys'

fees are $96,666.66 – about one-third of the total settlement amount.  *See* Dkt. 79 at 5.  "[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015); *see also Gaspar et al. v. Personal Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 WL 7871036, at * 2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District.").  Accordingly, the parties' proposed attorneys' fees are a reasonable percentage of the net award.

The Court also determines that the proposed amount of $4,437.62 apportioned to reimburse Plaintiffs' counsel for costs is fair and reasonable.  *See* Dkt. 79 at 5, 7.  Plaintiffs' counsel incurred costs in filing this action, service of process, and providing transportation for Plaintiffs to mediation and other legal appointments related to this action, *see id.* at 7, and provided documentation to verify these expenses, *see* Dkt. 79, Ex. 4 (Invoices for Expenses).

### C.  Release & Non-Disparagement Provision

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'"  *Gurung*, 226 F. Supp. 3d at 228 (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)).  For this reason, "[a] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are 'limited to the claims at issue in this action.'"  *Cionca v. Interactive Realty, LLC*, No. 15-CV-5123 (BCM), 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016) (quoting *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015)).

The release provision at issue here is more limited than those routinely rejected. The Settlement Agreement provides that Plaintiffs release Defendants from "all actions, claims and/or causes of action which Plaintiffs, Plaintiffs' heirs, executors, administrators, successors and/or assigns may now have or hereafter can, shall or may have against the Released Parties from the beginning of the world up to and including the day of the date of this Agreement for conduct set forth in the Action including claims arising under or pursuant to the FLSA, 29 U.S.C. § 201 *et seq*. and New York Labor Law, and its governing regulations." Dkt. 79, Ex. 1 ¶ 4; *see also* Dkt. 79 at 5 (noting that "[t]he Agreement does not contain a . . . general release"). Significantly, the release is limited to FLSA and NYLL claims, and Plaintiffs have not agreed to release any claims that may arise after the date of the Settlement Agreement. The Court finds that this release is sufficiently limited.

Finally, courts must carefully review any confidentiality provision in FLSA settlements because such a provision is in tension with Congress' broader goals in enacting FLSA. *See Nights of Cabiria, LLC*, 96 F. Supp. 3d at 177-78. Specifically, courts have a duty not only to safeguard the rights of individual FLSA litigants, but also to ensure that a proposed settlement comports with FLSA's broader, remedial goals, which include ensuring widespread compliance with the statute. *See id.* Here, the Settlement Agreement does not include a confidentiality provision, *see generally* Dkt. 79, Ex. 1; *see also* Dkt. 79 at 5 (noting that "[t]he Agreement does not contain a confidentiality provision[] [or] a non-disparagement clause"), and thus this concern is not present here.

## CONCLUSION

For the foregoing reasons, the Court approves the Settlement Agreement and dismisses this action with prejudice in accordance with the Settlement Agreement. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:   May 22, 2020
        New York, New York

_____
Ronnie Abrams
United States District Judge